UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

| | |
|---|---|
| LUCY MAZUREK PILCH<br>a/k/a/ Lucy M. Mazurek, | Bankruptcy Court<br>Case No. SL-00-04225 |
| Appellant, | District Court<br>Case No. 1:08-CV-272 |
| v. | Hon. Gordon J. Quist |
| ROSE BAREHAM,<br>Chapter 7 Trustee, | |
| Appellee.                    / | |

**OPINION**

Appellant, Lucy Mazurek Pilch ("Pilch"), the debtor in the underlying Chapter 7 bankruptcy case, appeals several orders entered by the United States Bankruptcy Court for the Western District of Michigan. The Court determines that oral argument is unnecessary because the facts and legal arguments are adequately presented in the briefs and oral argument would not be helpful in deciding the issues presented. Fed. R. Bankr. P. 8012. For the following reasons, the Court affirms.

**Background**

The facts on which this decision is rendered are undisputed. Pilch owned real property located at 727 Seymour, Lansing, Michigan ("the property"). Salomon Brothers Realty Corp. ("Salomon") was the assignee of the mortgage on the property. Ocwen Loan Servicing, LLC, ("Ocwen") serviced the loan on Salomon's behalf. On September 24, 1997, a fire damaged the property. A dispute arose between Pilch and Ocwen concerning repair of the property and distribution of the fire insurance proceeds. As a result of the dispute, the property was not repaired and fire insurance proceeds were not applied to the principal balance of the mortgage. Salomon

began foreclosure proceedings once Pilch failed to pay her mortgage payments, but on May 23, 2000, Pilch filed the underlying Chapter 7 bankruptcy petition. Salomon filed a claim in the amount of $55,117.00. On March 29, 2001, the bankruptcy court lifted the automatic stay as it applied to Salomon, and Salomon continued the foreclosure proceedings.

On June 6, 2001, Pilch filed a complaint in Ingham County Circuit Court, State of Michigan, against Salomon and Ocwen alleging breach of contract, fraudulent misrepresentation, and violation of the Michigan Consumer Protection Act. The court issued a temporary restraining order and a preliminary injunction to prevent foreclosure on the property. In Pilch's bankruptcy case, the Trustee determined that estate assets included this lawsuit, and on September 18, 2001, the bankruptcy court approved a stipulation regarding prosecution of the claim and distribution of any recovery. The stipulation provided that Pilch would assume sole responsibility for prosecuting the claim with her own representation, but that both Pilch and the bankruptcy estate would have an interest in the claim and any recovery. Specifically, the stipulation stated that if Pilch was successful in achieving a recovery, the proceeds would be allocated as follows:

    i.    First, reasonable and necessary costs and expenses in pursuing the Claim.

    ii.    Second, attorney fees for [Pilch's] litigation counsel, not to exceed 33 1/3% of the amount recovered.

    iii.    Third, the Trustee will receive 50% of the remaining monies allowable to [Pilch's] net share of the litigation proceeds.

Pilch was ultimately successful in her state court lawsuit and received a final judgment in the amount of $111,029.45. After a dispute arose concerning who would receive the judgment funds, Ocwen filed a Motion for Instruction from the bankruptcy court. On November 16, 2006, the bankruptcy court approved a stipulation of the parties that Ocwen would tender the amount of the judgment to the Trustee and that the "funds shall be deposited and held in a separate interest bearing

account, in the name of The Estate of Lucy Pilch, by the Chapter 7 Trustee until further Order of the Court." Ocwen complied with this order via a check made payable to "Rose E Bareham Chapter 7 Trustee."

Meanwhile, the City of Lansing began demolition proceedings against the property. Although Pilch and Salomon were both aware of the demolition proceedings, the property was eventually demolished. On August 7, 2006, Salomon filed an amended claim in the amount of $55,117.00 based on Pilch's outstanding obligation to Salomon under the terms of the mortgage and note. Pilch objected to Salomon's claim, arguing that it was barred by the doctrine of claim preclusion. Pilch claimed that whether she was in default under the mortgage and note was an issue that was decided, or should have been raised by Salomon, in the state court lawsuit and that Salomon should now be barred from asserting a claim against her on that basis. On February 28, 2007, the bankruptcy court overruled Pilch's objection and held that Salomon's claim was not barred by *res judicata* or claim preclusion.[1]

On March 9, 2007, Pilch filed a notice of appeal from the bankruptcy court's order overruling her objection to Salomon's claim. Pilch elected to have her appeal decided by a district court pursuant to 28 U.S.C. § 158(c)(1)(A). Included in her notice of appeal, and submitted to the district court on appeal, was a Motion for Leave to Appeal the bankruptcy court's interlocutory order. Pilch presumed that the bankruptcy court's order was an interlocutory order that could only be appealed with leave of the court pursuant to 28 U.S.C. § 158(a)(3). Therefore, this Court treated Pilch's appeal as an appeal of an interlocutory order under 28 U.S.C. §158(a)(3). The Court denied Pilch leave to appeal because the issue of whether Salomon's claim was barred by *res judicata* or

---

[1] While the bankruptcy court did overrule Pilch's objection to Salomon's claim, the court ordered Salomon to amend its claim to reflect whether its claim was secured, unsecured, or bifurcated. There was confusion surrounding the nature of Salomon's claim because a tax foreclosure had been completed with respect to the property and the property actually consisted of two parcels. Salomon filed its seconded amended claim, and Pilch once again objected. The bankruptcy court overruled Pilch's objection on October 1, 2007.

3

claim preclusion did not involve a pure question of law and because it was not clear whether leave to appeal would materially advance the ultimate termination of the litigation. *In re Pilch*, No. 1:07-cv-306, 2007 WL 1686308, at *4 (W.D. Mich. June 8, 2007). The Court closed the case, and Pilch did not appeal the Court's ruling.

After returning to the bankruptcy court, the Chapter 7 Trustee filed a Notice of Trustee Report, which included the Trustee's application for compensation and reimbursement of expenses. The Trustee applied for compensation in the amount of $7,012.57 based on a net estate value of $75,251.33. This amount consisted primarily of Pilch's $111,029.45 recovery from Ocwen minus the $36,597.56 paid directly to Pilch pursuant to the bankruptcy court's prior stipulations and orders. The Trustee did not base her compensation on the amount paid to Pilch because that amount is exempt under 11 U.S.C. § 326(a). Pilch objected to the Trustee's application for compensation because, she argued, the Trustee improperly based her compensation on $37,834.34 of the recovery paid to Pilch's attorney, Cynthia Law, for her attorney fees and costs in prosecuting the state court litigation. Pilch claimed that pursuant to the court-approved stipulation regarding this claim, the proceeds, if any, were supposed to pay attorney fees first with only 50% of the remainder going to Pilch's estate. Thus, Pilch argued, the portion of the recovery that covered her attorney fees was not part of the estate and should not have been used to calculate the Trustee's compensation. The bankruptcy court overruled Pilch's objection and approved compensation for the Trustee in the amount $7012.57. Pilch filed the notice of appeal in this case on February 10, 2008.

**Analysis**

*Subject Matter Jurisdiction*

This Court has jurisdiction to review orders of the bankruptcy court pursuant to 28 U.S.C. § 158(a). Pilch has elected to have her appeal heard by a district court as provided for in 28 U.S.C. § 158(c)(1)(A). 28 U.S.C. § 158(a) provides this Court with jurisdiction to hear bankruptcy appeals:

4

>    (1) from final judgments, orders, and decrees;
>
>    (2) from interlocutory orders and decrees issued under section 1121(d) of title 11 increasing or reducing the time periods referred to in section 1121 of such title; and
>
>    (3) with leave of court, from other interlocutory orders and decrees. . . .

The Trustee and Salomon argue that Pilch cannot appeal the bankruptcy court's order overruling her objection to Salomon's claim because Pilch did not appeal that order properly within the applicable time limitation. Because a timely appeal is a prerequisite to this Court's jurisdiction, the Court must first determine whether Pilch complied with the applicable time limitations for each of the bankruptcy court orders appealed from. *Walker v. Bank of Cadiz (In re LBL Sports Center, Inc.)*, 684 F.2d 410, 412 (6th Cir. 1982) ("This Court and others which have passed on the question have uniformly held that a district court lacks jurisdiction over an appeal that is not timely filed pursuant to [the predecessor of Bankruptcy Rule 8002]."); *Crider v. Dobbs (In re Crider)*, No. 98-2376, 2000 WL 191823, at *3 (6th Cir. Feb. 10, 2000).

28 U.S.C. § 158(a) essentially provides two methods of appeal depending on the nature of the order appealed from. If the order is a final judgment, order, or decree, then the appellant may appeal that order as of right to a district court or a bankruptcy appellate panel pursuant to § 158(a)(1). Bankruptcy Rule 8001(a) states that such appeals must be taken "by filing a notice of appeal with the clerk within the time allowed by Rule 8002." Bankruptcy Rule 8002 states that "[t]he notice of appeal shall be filed with the clerk within 10 days of the date of the entry of the judgment, order, or decree appealed from." Fed. R. Bankr. P. 8002. Thus, if the order at issue is a final order, then a district court has jurisdiction to hear the appeal only if the appellant filed a notice of appeal within ten days of entry of that order. *See id.* If, however, the order appealed from is an interlocutory order or decree, then the appellant may only appeal that order pursuant to § 158(a)(3) by filing a notice of appeal within the time allowed by Rule 8002 and by filing a motion

5

for leave to appeal with the appellate court (either the district court or the bankruptcy appellate panel as the case may be). Fed. R. Bankr. P. 8001(b).

This Court has jurisdiction over Pilch's appeal of the bankruptcy court's order awarding the Trustee compensation. The bankruptcy court approved the Trustee's compensation on February 3, 2008, and Pilch filed the notice of appeal in this case on February 10, 2008. Because Pilch filed her notice of appeal within ten days of the order, the Court has jurisdiction to hear Pilch's challenge to that order.

The Court's jurisdiction to review the bankruptcy court's order overruling Pilch's objection to Salomon's claim is more complex. The bankruptcy court overruled Pilch's objection on February 28, 2007, but the notice of appeal in this case was not filed until February 10, 2008. While at first glance this appears to be beyond the ten-day period provided for in Rule 8002, Pilch did file a prior appeal in a separate case with respect to the February 28, 2007, order. Pilch presumed the bankruptcy court's decision to be an interlocutory order that could be appealed only with leave of the court pursuant to 28 U.S.C. § 158(a)(3). Thus, she filed both a notice of appeal and a motion for leave to appeal. While this Court denied Pilch leave to appeal, neither party asked this Court to consider whether the order was a final order from which Pilch could appeal as of right without needing leave to appeal. However, Salomon now argues that the bankruptcy court's decision was a final order, that Pilch was incorrect to characterize the order as interlocutory, and that this Court now lacks jurisdiction to hear a challenge to that order because the notice of appeal in the present case was not filed within ten days of the February 28, 2007, order. In response, Pilch maintains that the bankruptcy court's initial decision was an interlocutory order that (presumably) did not become final until the bankruptcy court approved the Order for Payment of Dividends on February 3, 2008, thereby providing this Court with jurisdiction based on her notice of appeal filed on February 10, 2008. Thus, the Court must first determine whether the bankruptcy court's order of February 28,

2007, overruling Pilch's objection to Salomon's claim was a final order at the time it was entered or whether it was an interlocutory order that became a final order within ten days of Pilch's notice of appeal.

Generally, an order is final if it "'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798, 109 S.Ct. 1494, 1497 (1989) (quoting *Van Cauwenberghe v. Biard*, 486 U.S. 517, 521, 108 S.Ct. 1945, 1949 (1988)). However, the "finality requirement is considered 'in a more pragmatic and less technical way in bankruptcy cases than in other situations.'" *Lindsey v. O'Brien (In re Dow Corning Corp.)*, 86 F.3d 482, 488 (6th Cir. 1996) (quoting *In re Cottrell*, 876 F.2d 540, 541-42 (6th Cir. 1989)). While "[t]he question of finality in bankruptcy appeals is a thorny one . . . 'virtually all decisions agree that the concept of finality applied to appeals in bankruptcy is broader and more flexible than the concept applied in ordinary civil litigation.'" *Millers Cove Energy Co., Inc. v. Moore (In re Millers Cove Energy Co., Inc.)*, 128 F.3d 449, 451 (6th Cir. 1997) (quoting 16 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3926.2 (2d ed. 1996)). Courts use this "pragmatic approach to finality in bankruptcy because certain proceedings in a bankruptcy case are so distinctive and conclusive either to the rights of individual parties or the ultimate outcome of the case that final decisions as to them should be appealable as of right." *Prestige Ltd. P'ship-Concord v. E. Bay Car Wash Partners (In re Prestige Ltd. P'ship-Concord)*, 234 F.3d 1108, 1113 (9th Cir. 2000) (internal quotation omitted). "Therefore, where an order in a bankruptcy case finally disposes of discrete disputes within the larger case, it may be appealed immediately." *Lindsey*, 86 F.3d at 488. Determining whether the bankruptcy court's order is final depends on the nature of the order and its surrounding circumstances.

The order overruling Pilch's objection to Salomon's claim was a final order immediately appealable as of right. The order resolved the discrete dispute presented – whether Salomon's claim

7

was valid or whether it was barred by res judicata and/or claim preclusion – and left open no unresolved dispute pertaining to the merits of Salomon's claim.  While the order did instruct Salomon to amend its claim, it did so only to resolve the nature of the claim (whether it was secured, unsecured, or bifurcated), but not its validity.  Thus, the remaining actions to be taken with respect to Salomon's claim were simply ministerial.  Courts in the Sixth Circuit have repeatedly held that an order overruling an objection to a claim is a final order.  *Morton v. Morton (In re Morton)*, 298 B.R. 301, 303 (B.A.P. 6th Cir. 2003) ("The bankruptcy court's order overruling Debtor's objections to claims is a final order."); *Warren v. Security Nat'l Bank (In re Oelrich)*, 378 B.R. 416, 2007 WL 2692324, at *1 (B.A.P. 6th Cir. Sept. 11, 2007); *Perron v. eCast Settlement Corp. (In re Perron)*, 350 B.R. 628, 2006 WL 2933827, at *1 (B.A.P. 6th Cir. Oct. 13, 2006).  Additionally, the First and Ninth circuits have likewise decided than an order overruling an objection to a claim is a final order when there is no significant dispute remaining concerning the validity of the claim.  *Perry v. First Citizens Fed. Credit Union (In re Perry)*, 391 F.3d 282, 285 (1st Cir. 2004) (holding that an order overruling an objection to a claim was final because it "left open no unresolved dispute pertaining to [the creditor's] claim."); *see Prestige Ltd. P'ship-Concord*, 234 F.3d at 1113-14.  For those reasons, the Court concludes that the bankruptcy court's order overruling Pilch's objection to Salomon's claim was a final order when it was issued on February 28, 2007.[2]

Because the bankruptcy court's order overruling Pilch's objection to Salomon's claim was a final order immediately appealable as of right, this Court has jurisdiction over Pilch's appeal of that order only if she filed her notice of appeal within the ten-day period contained in Rule 8002. However, Pilch did not file her notice of appeal in this case until February 10, 2008, almost one

---

[2]Even if the order was not final because Salomon had to amend its claim, the Court would still be presented with the same jurisdictional issue.  Salomon did amend its claim, and the bankruptcy court overruled Pilch's objection to that amended claim on October 1, 2007.  Thus, even under this scenario, the bankruptcy court order would have become final on this date as there were no remaining disputes surrounding this claim.

8

year from the date of the bankruptcy court's order. Thus, the Court does not have jurisdiction in this case to hear an untimely appeal from that final order. Moreover, Pilch's prior attempt to appeal that order in a separate case does not change the analysis. Pilch treated the order as interlocutory and filed a notice of appeal and a motion for leave to appeal pursuant to 28 U.S.C. § 158(a)(3). Although the order was a final order appealable to the district court as of right for the aforementioned reasons, Pilch chose to present her appeal as interlocutory, and neither party raised the issue of whether the order was final or interlocutory. The Court denied Pilch's motion for leave to appeal because it did not meet the relevant legal standard without being asked to consider whether Pilch could have appealed that order as of right, thereby obviating the need for leave to appeal. While Pilch could have appealed as of right in the prior case, that case is concluded, Pilch chose not to appeal from this Court's decision in that case, and it was Pilch who chose her method of appeal in the first instance. Moreover, the fact that Pilch could have appealed the bankruptcy court's order as of right in the prior case does not grant the Court jurisdiction in this case to hear an untimely appeal.

Therefore, because this appeal was not timely with respect to the bankruptcy court's order overruling Pilch's objection to Salomon's claim, the Court does not have jurisdiction to hear Pilch's appeal of that order. However, Pilch's appeal is timely with respect to the bankruptcy court's order awarding the Trustee compensation, so the Court does have jurisdiction to review that order.

*Standard of Review*

On review, this Court "is bound by the bankruptcy court's findings of fact unless they are clearly erroneous." *Investors Credit Corp. v. Batie (In re Batie)*, 995 F.2d 85, 88 (6th Cir. 1993). The Court "reviews the bankruptcy court's legal conclusions *de novo*." *Id.*

9

*Trustee Compensation*

11 U.S.C. § 330 allows a bankruptcy court to award a trustee reasonable compensation for actual, necessary services rendered by the trustee. However, 11 U.S.C. § 326(a) provides a limit on the trustee's compensation:

> In a case under Chapter 7 or 11 the court may allow reasonable compensation under section 330 of this title of the trustee for the trustee's services, payable after the trustee renders such services, not to exceed 25 percent on the first $5,000 or less, 10 percent on any amount in excess of $5,000 but not in excess of $50,000, 5 percent on any amount in excess of $50,000 but not in excess of $1,000,000, and reasonable compensation not to exceed 3 percent of such moneys in excess of $1,000,000, *upon all moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor, but including holders of secured claims.*

The Trustee applied for compensation under the formula in § 326(a) based on a value that included money she received from Ocwen as a result of the state court judgment and which she paid to Pilch's attorney for costs, expenses, and attorney fees related to prosecuting that lawsuit. Pilch argues that the Trustee's compensation exceeded the limit established in 11 U.S.C. § 326(a) because the money paid to Pilch's attorney should not have been used as a base for the Trustee's compensation.[3]

In cases of statutory construction, "the starting point is the language employed by Congress." *Chapman v. Higbee Co.*, 319 F.3d 825, 829 (6th Cir. 2003). Additionally, "where the statute's language is plain, the sole function of the courts is to enforce it according to its terms." *Id.* (internal quotation omitted). The primary dispute amongst the parties is whether the amount the Trustee received from the judgment and paid to Pilch's counsel was "moneys disbursed or turned over in the case by the trustee to parties in interest. . . ." 11 U.S.C. § 326(a). If so, then the Trustee's compensation does not exceed the statutory limit.

---

[3] 11 U.S.C. § 326(a) provides the maximum amount a trustee may be compensated; however, a trustee is only entitled to "reasonable compensation for actual, necessary services rendered by the trustee. . . ." Therefore, even if the trustee's compensation does not exceed the maximum amount, the bankruptcy court is still obligated to assess the reasonableness of the trustee's compensation. Because Pilch only argues that the Trustee's compensation exceeds the statutory maximum, not that the compensation is otherwise unreasonable, the Court limits its analysis accordingly.

There is no dispute that the Trustee "disbursed or turned over" money as those terms are used in 11 U.S.C. § 326(a). Pursuant to a stipulation and court order, the Trustee received a check from Ocwen in the amount of $111,029.45. In accordance with an order of the bankruptcy court, the Trustee then tendered $37,834.34 to Pilch's attorney for her costs and attorney fees in prosecuting the state court lawsuit. Black's Law Dictionary defines disburse as "[t]he act of paying out money, commonly from a fund or settlement of a debt or account payable." Black's Law Dictionary (8th ed. 2004). Moreover, this case stands in contrast to similar cases where trustee compensation has been denied because the trustee never actually possessed the settlement proceeds. *Kandel v. Alexander Leasing Corp.*, 107 B.R. 548, 551 (N.D. Ohio 1988) ("The trustee himself can point to no time in which the monies actually passed through his hands."); *In re Guido*, 237 B.R. 562, 564-65 (Bankr. E.D.N.Y. 1999) ("In this particular case, the trustee never received any settlement proceeds that were paid directly to debtor's personal injury counsel in fees and expenses or to the worker's compensation carrier.").

Pilch has a good argument that the money owed to her attorney should never have passed through the Trustee's hands because the stipulation entered into on September 18, 2001, provided that the proceeds of any recovery were supposed to pay Pilch's attorney *first* with the estate getting 50% of the *remainder*. However, on November 16, 2006, after Ocwen filed a motion for instruction on turning over the judgment funds, the parties stipulated that the "funds shall be deposited and held in a separate interest bearing account, in the name of The Estate of Lucy Pilch, by the Chapter 7 Trustee until further Order of the Court." It was this stipulation that placed the funds in the Trustee's hands, made her responsible for compensating Pilch's attorney, instructed Ocwen to tender its check to the Trustee, and made that check property of the estate. Pilch cannot challenge on appeal that the Trustee should not have received this money in the first place when it was a

11

stipulation that Pilch freely and voluntarily entered into that led to such a result. *See United States v. Robinson*, 191 F. App'x 408, 409 (6th Cir. 2006). Therefore, the Court concludes that the portion of the judgment received by the Trustee and paid to Pilch's attorney was "moneys disbursed or turned over by the trustee" within the meaning of 11 U.S.C. § 326(a). Thus, the Trustee's compensation did not exceed the statutory maximum if Pilch's attorney was a "party in interest."

> Party in interest has been described as "an expandable concept depending on the particular factual context in which it is applied." *In re River Bend-Oxford Assoc.*, 114 B.R. 111, 113 (Bankr. D.Md. 1990). In various contexts a "party in interest" has been held to be one who has an actual pecuniary interest in the case, *Kapp v. Naturelle, Inc.*, 611 F.2d 703, 706 (8th Cir. 1979); anyone who has a practical stake in the outcome of a case, *In re Amatex Corp.*, 755 F.2d 1034, 1041-44 (3rd Cir. 1985); and those who will be impacted in any significant way in the case, *In re Johns-Manville Corp.*, 36 B.R. 743, 754 (Bankr. S.D.N.Y. 1984).

*Morton*, 298 B.R. at 307 (citing *In re Cowan*, 235 B.R. 912, 915 (Bankr. W.D. Mo. 1999)). "A party in interest includes those persons with a personal stake or pecuniary interest in the outcome of the controversy." *Normali v. O'Donnell (In re O'Donnell)*, 326 B.R. 901, 2005 WL 1279268, at *5 (B.A.P. 6th Cir. May 19, 2005). While there are few cases interpreting the term "party in interest" with respect to 11 U.S.C. § 326(a), some bankruptcy courts have adopted a slightly more restrictive analysis and held that this term "include[s] an entity to whom distribution of estate assets is legitimately made in furtherance of the overall distribution process contemplated in bankruptcy." *In re Citi-Toledo Partners II*, 254 B.R. 155, 163 (Bankr. N.D. Ohio) (citing *In re North American Oil & Gas Inc.*, 130 B.R. 473, 479 (Bankr. W.D. Tex. 1990)); *see also In re Market Res. Dev. Co.*, 320 B.R. 841, 847 (Bankr. E.D. Va. 2004). These courts have reasoned that the Bankruptcy Code facilitates this goal by providing a hierarchal list of parties to whom distribution is made. *In re Citi-Toledo Partners II*, 254 B.R. at 163. Because that list is limited to certain parties, however, these

courts held that a person is a "party in interest" only if they either hold a "claim against the debtor's bankruptcy estate" or are "entitled to an administrative expense under § 503." *Id.*; *In re Market Res. Dev. Co.*, 320 B.R. at 847.

Under any of these interpretations of the term, Pilch's attorney was a "party in interest." As she was entitled to her costs and attorney fees for prosecuting the state court lawsuit, she had a pecuniary interest in the administration of the settlement proceeds. Additionally, she had a practical stake in – and would be significantly impacted by – any decision made with respect to the settlement funds. Moreover, even under the more restrictive analysis of "party in interest" adopted by *In re Citi-Toledo Partners II*, Pilch's attorney was a "party in interest." While Pilch's attorney did not hold a "claim" against the estate because her right to payment did not arise prepetition, *In re Citi-Toledo Partners II*, 254 B.R. at 164, she was entitled to an administrative expense under 11 U.S.C. § 503(b)(1)(A). This section entitles parties to administrative expenses for "the actual, necessary costs and expenses of preserving the estate. . . ." 11 U.S.C. § 503(b)(1)(A). A "debt qualifies as an 'actual, necessary' administrative expense only if (1) it arose from a transaction with the bankruptcy estate and (2) directly and substantially benefitted the estate." *Pension Benefit Guaranty Corp. v. Sunarhauserman, Inc. (In re Sunarhauserman, Inc.)*, 126 F.3d 811, 816 (6th Cir. 1997). The payment made to Pilch's attorney qualifies as an administrative expense because it was an actual, necessary cost of preserving the estate. The right to payment for Pilch's attorney arose from a transaction with the bankruptcy estate – the September 18, 2001, stipulation – and directly and substantially benefitted the estate by leading to a recovery for the estate that better enabled the Trustee to pay Pilch's creditors. *See In re Citi-Toledo Partners II*, 254 B.R at 165. Therefore, Pilch's attorney was a "party in interest" under any interpretation of the term because she had a pecuniary interest in the administration of the settlement proceeds and because her fees and expenses would have qualified as an administrative expense.

13

Because the money paid to Pilch's attorney was "disbursed or turned over" by the trustee to a "party in interest," the Trustee was permitted to base her compensation on that expense. Therefore, the Trustee's compensation did not violate the statutory maximum in 11 U.S.C. § 326(a). As such, the bankruptcy court did not err in approving the Trustee's compensation.

## Conclusion

The Court lacks jurisdiction to hear Pilch's challenge to the bankruptcy court's order overruling Pilch's objection to Salomon's claim. The Court affirms the order of the bankruptcy court setting the Trustee's compensation.

A separate Order will issue.


Dated: July 14, 2008            /s/ Gordon J. Quist
                                GORDON J. QUIST
                                UNITED STATES DISTRICT JUDGE